In the Matter of the Claim of ALBERT J. SIERANT et al., Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent; GENERAL MILLS, INC., Appellant.

Third Department, May 15, 1967.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Arnold T. Olena* of counsel), for appellant. *Louis J. Lefkowitz, Attorney-General* (*Samuel Stern* of counsel), for Industrial Commissioner,

respondent. *Thomas P. McMahon* for Albert J. Sierant and others, respondents.

STALEY, JR., J. This is an appeal by the employer, General Mills, Inc., from a decision of the Unemployment Insurance Appeal Board, which determined that the claimants were entitled to unemployment insurance benefits.

On March 25, 1963, all of the appellant's employees at its Buffalo plant, represented by Local 1286, International Longshoremen's Association, engaged in a wildcat strike in protest against a layoff of five of their members. These employees worked at the company's grain elevators. As a result of this strike, the appellant was unable to transfer grain from the elevators to other parts of its plant and, within two or three days' time, it became necessary for the appellant to schedule off a substantial number of its employees working in its flour and cereal processing mills. The claimants are representatives of the nonstriking employees who were scheduled off.

It is conceded that the claimants lost their employment because of the strike by the longshoremen. The claimants contend, however, that the strike or industrial controversy did not occur in the establishment in which they were employed, and that the suspension of benefits provision contained in subdivision 1 of section 592 of the Labor Law is, therefore, not applicable, and that they were entitled to immediate benefits.

Subdivision 1 of section 592 of the Labor Law provides for the suspension of unemployment insurance benefits for an employee for seven weeks beginning the day after " he lost his employment because of a strike, lockout, or other industrial controversy in the establishment in which he was employed ". The Unemployment Insurance Appeal Board determined that the claimants and the striking workers were employed in separate establishments.

The appellant's plant at Buffalo, New York, is located on a narrow peninsula formed by the confluence of the Buffalo River and the City Ship Canal. Except for the fact that South Michigan Avenue and Ganson Street run through the plant site, the plant is located on a single parcel of land. The production operations at the plant are housed in a considerable number of structures interconnected by an elaborate bridge system. The bridge system is designed for use to transfer grain, flour and other materials and as employee passageways. The site is fenced except where waterfront boundaries make fencing unnecessary.

The "Buffalo Plant" is supervised by a plant manager who is responsible for all operations at the plant. The plant is serviced by one administrative office; one personnel office; one purchasing office; one receiving office; one warehouse; one store-room for janitorial supplies; one gatehouse for visitors; one cafeteria; one medical and first-aid office; one machine shop; one set of railroad spur tracks; one traffic control office; five parking areas open to all employees, and one powerhouse which supplies steam, electricity, compressed air and similar services to the entire plant.

Grain stored in the elevators is used only for plant purposes. All work at the plant has for its ultimate purpose, the conversion of wheat and other grains into a number of food products. The facts indicate that all of the facilities at the plant, the grain storage elevators and the mills are interdependent, and one may not operate without the other for any length or period of time even though they may be housed in separate structures or buildings.

In *Matter of Machcinski (Corsi)* (277 App. Div. 634) the court affirmed a determination of the Unemployment Insurance Appeal Board awarding benefits to claimants employed at the Buffalo and Green Island plants of Ford Motor Company holding that they were not employed in the same establishment stating (p. 643): "In our opinion we believe the word 'establishment' as used in the statute means the place where the employee was last employed. Obviously, the Legislature never intended by the use of the word 'establishment' to include all the plants of the Ford Motor Company, situate as they are in so many States of the union and foreign countries."

In *Matter of Cohn (Catherwood)* (24 A D 2d 298) the court held that the employees of a subsidiary corporation engaged in stevedoring operations at a dock adjacent to the parent corporation's processing plant, which was subject to a strike, were employees in the establishment where the strike existed stating (p. 300): "It is obvious that for business expediency, not labor-management advantage, the different corporations were organized. The subsidiary is owned, controlled, managed and operated by the parent, interdependent and integrated and fits within the framework of 'establishment' as outlined by the Court of Appeals in *Matter of Ferrara (Catherwood)* (10 N Y 2d 1, 8)".

In *Matter of Ferrara (Catherwood)* (10 N Y 2d 1) the court, after considering the principles which governed the enactment of the section, interpreted the definition of the term "establishment" as used in the section, stating as follows (pp. 8-9):
"So read, it is evident that the term 'establishment' is to be

defined in geographic terms rather than in terms of corporate organization or exercise of management powers and functions. * * * Moreover, the geographic concept of ' establishment ', looking only to concrete facts, better fits the legislative purpose of simplicity of administration than does a concept which would require determinations regarding functional ' interdependence ', ' integration ' or ' entity '. Finally, apart from the fact that the term ' establishment ', defined in geographic terms, is more expeditiously interpreted and applied by the Industrial Commissioner, it is more easily understood by both employee and employer, the persons whom it directly involves and affects.''

In *Matter of George (Catherwood)* (14 N Y 2d 234) the Court of Appeals reiterated its position in the *Ferrara* case and affirmed the board's determination that three General Motors plants (the motor plant, the forge, and the foundry), which were all located on a single site in Tonawanda, New York, constituted a single establishment. A similar holding was made by this court relative to the Bethlehem Steel Company plants at Lackawanna, New York in *Matter of Lasher (Corsi)* (279 App. Div. 505).

Applying the standard of geographic unity to the facts in the instant case, we conclude that the claimants herein were clearly employed at the establishment where the industrial controversy arose, and were not entitled to benefits except as provided by subdivision 1 of section 592 of the Labor Law.

The decision should be reversed and the claims dismissed.

GIBSON, P. J., HERLIHY, REYNOLDS, STALEY, JR., and GABRIELLI, JJ., concur in opinion per STALEY, JR., J.

Decision reversed and claims dismissed, without costs.